IN THE MATTER OF ISAAC L. KIP.

Under the act to perpetuate the testimony of witnesses, (1 R. L. 454,) a witness is bound to give evidence in the same cases and to the same extent that he would be, were he called as a witness upon the trial of the cause.

The act does not authorize the examination of a witness who could not be compelled to testify upon the trial.

No witness is bound to answer a question, which would either criminate himself, render him infamous, or subject him to a penalty or forfeiture.

A witness who is neither a nominal nor real party to the suit, is not excused from giving evidence, although his testimony might be used against him in a civil suit; unless it will subject him to some loss or disadvantage in the nature of a penalty or forfeiture.

In a suit by or against a corporation, one of the corporators is not so far a party to the suit as to be excused from testifying against the corporation.

The answer of a corporator to a bill of discovery cannot be read in evidence against the corporation.

The declarations of corporators, although officers of the corporation, are not evidence against the corporation.

Corporators who have no personal interest in the controversy are competent witnesses in favor of the corporation.

ON the 19th of August, 1829, an order of this court was made directing a *habeas corpus* to be issued to the sheriff of New York to bring up the body of Isaac L. Kip, then in his custody, under an order of commitment made by Thomas Bolton, a master in Chancery; which writ was thereupon issued, returnable in this court on Tuesday the 25th of August, at the capitol in the city of Albany. By the sheriff's return, the report of Master Bolton and other affidavits and documents produced before the court, it appeared that L. L. Van Kleeck made oath before the master that an action of ejectment commenced by him in the Supreme Court against the minister, elders and deacons of the reformed Protestant Dutch Church in the city of New York and Cornelia Strong, and another action against the same corporation and E. and S. S. *Rockwell, affected the title of lands lying in the city and county of New York; that the testimony of Isaac L. Kip was material and neces-

Sept. 7th.

[*602]

sary in the prosecution of such suits; and he applied for his examination before the master pursuant to the provisions of the act to perpetuate the testimony of witnesses, (1 Rev. Laws, 454.) The master made an order for the examination of Kip, and assigned a time and place for that purpose, of which due notice was given to the defendants in the ejectment suits; and the witness was summoned to attend accordingly. Kip appeared before the master, but declined testifying, on the ground that he was the treasurer and one of the corporators of the Dutch Church in the city of New York, and that he was also a pew holder in two churches which were on lands the title whereof depended upon the same questions which arose in those causes. These facts were not disputed by Van Kleeck's counsel, who still insisted upon his right to perpetuate the testimony of the witness in these suits. The master decided that Kip was bound to testify, notwithstanding his objection; and on his refusal to be sworn, the master issued warrants for his commitment in pursuance of the provisions of the act.

*J. Duer* for L. Kip:—Kip, as a corporator, being a party in interest to the ejectment suits, and being directly interested in their event, was privileged from examination before the master. The corporators of the Dutch Church in New York, for the time being, are as much parties in interest as if sued in their private names. The whole doctrine of corporations has been mistified by a jargon of definitions. The true definition of a corporation is, that it is an association of natural persons for certain purposes. If the corporators of a corporation aggregate die or cease to exist, the corporation is dissolved. Courts have a right to inquire into the rights and character of the private individuals composing a corporation. In England the inhabitants of a parish which is a corporation are made liable for the support of the poor and the repair of highways. The judiciary act of Congress speaks of citizens of differen

states being parties to a suit; and no statute expressly gives jurisdiction to the federal courts over *corporations. And it was contended, in the suit of *The Bank of the United States* v. *Devaux*, (5 Cranch, 61, 92,) that a corporation was not a citizen of a state, and that, therefore, the court had no jurisdiction of the cause. But the court decided that the real parties to the suit were the corporators, who were citizens, and that, therefore, the court had jurisdiction. In the suit of *The Washington Ins. Co. of the city of New York* v. *Price*, (1 Hopk. 1,) the Chancellor decided that a stockholder of that corporation was a party to the suit. The question here is as to the privilege of a witness, and not his competency. A member of a corporation was always excused from testifying against the corporation if he claimed his privilege. Kip has a personal interest in the ejectment suits. In the suit of *Mauran* v. *Lamb*, (7 Cowen, 174,) the real party, though not named in the record, was allowed his privilege. (*People* v. *Irving* 1 Wendell, 20.) In *King* v. *Inhabitants of Woburn*, (10 East's Rep. 395,) it was held that a rateable inhabitant, although not a nominal party to the appeal, was entitled to his privilege if he claimed it on account of interest, and that he could not be compelled to give evidence for the adverse party. In the charter of the Dutch Church, there is a clause authorizing an assessment to be made upon the members of the church for all expenses either in support of the minister or otherwise. In this case Kip has a personal interest. If examined he may be subjected to a civil suit. This is an attempt at a discovery, which could not be obtained by a bill of discovery. Kip is an officer of the corporation, and has possession of the title deeds. If a bill had been filed against the officers of the corporation, they could not have been compelled to disclose the evidence here sought after.

*L. H. Palmer*, contra:—If Kip is such a party to the ejectment suits as to render his declarations admissible evi-

1829.

In the Matter of Kip.

dence against the corporation, then he is privileged from examination as a witness. At the time the charter of this church was granted, there were religious difficulties in the colony of New York. The Church of England had been long established; and it was deemed important to obtain a charter for the *Dutch Church different from those of the Church of England. The declaration in the charter of the former, that communicants should be members of the church, only conferred upon them the immunities and privileges of the church, analagous to those enjoyed by the citizens of New York and Albany as members of the corporations of those cities. The provisions in the charter subjecting the members of the church to an assessment have been repealed. (1 R. L. 67, Greenleaf's ed. ch. 9, sect. 2 & 7.) No general rules can be laid down as to the competency of corporators as witnesses for or against the corporation. Each case must be governed by its peculiar circumstances. Corporations are divisible into two general classes: 1. Public and general corporations, such as colleges, towns, cities, &c.; 2. Private corporations, such as banking companies, &c. In the former class of corporations, the officers and members have no personal interest in the funds and property of the corporation. In private corporations the funds and property belong to the stockholders. The members of public corporations are admissible as witnesses for or against the corporation; for they do not testify for or against themselves as individuals. The rule appears to be, that where members of a corporation cannot derive any private advantage from the subject matter of the controversy, which concerns the public only, they are admissible as witnesses. (2 Stark. Ev. part 4, p. 427.) The decisions upon the subject of admitting corporators as witnesses have been founded upon the distinction between public and private corporations; (*Hope Ins. Co. of Providence* v. *Boardman*, 5 Cranch, 57.) An interest to exclude a witness must be positive certain and direct. Where a corporation will only be . direct loser, and not the corporators, the interest of the lat-

ter is too remote to exclude them as witnesses for or against the corporation; (*Locke* v. *The North American Ins. Co.*, 13 Mass. Rep. 61.) In private corporations the members are the owners of the corporate property, and are directly interested in the event of a suit in which the corporation is a party. The Dutch Church of New York is a public corporation, created for public purposes, and the corporators have no personal *interest in its corporate property. If the corporation was dissolved, the property would not belong to the corporators; (*People* v. *Runkle*, 8 John. R. 363, Peak's N. P. Cases, 153 ; 2 Star. pt. 4, p. 427, tit. *Corporation; King* v. *Inhabitants of Hardwick*, 11 East, 578 ; *State of Connecticut* v. *Bradish*, 14 Mass. R. 296 ; 12 John. R. 285 ; *Drummer* v. *Corporation of Chippenham*, 14 Ves. 252 ; *Falls* v. *Belknap*, 1 John. R. 491 ; Swift's Ev. 57 ; *Waring* v. *Catawba Co.*, 2 Bay's Rep. 109 ; *Rex* v. *Prosser*, 4 T. R. 17 ; *King* v. *The Inhabitants of Little Lumley*, 6 T. R. 157 ; *King* v. *Inhabitants of Woburn*, 10 East's Rep. 395 ; *King* v. *Inhabitants of Whitley Lower*, 1 Maule & Selw. 636 ; *Jackson* v. *Van Duzen*, 5 John. R. 144 ; *Gilpin* v. *Vincent*, 9 John. 219 ; *Meredith* v. *Gilpin*, 6 Price, 146 ; *Jackson* v. *Inhabitants of Netherthong*, 2 Maule & Selw. 337, 8.) In *Nason* v. *Thatcher*, (7 Mass. Rep. 398,) corporators were received as witnesses in a suit between the heir and executor, although the corporation was made the residuary legatee by the will of the testator. An inhabitant of the state has been decided to be a competent witness in a suit where the state is a party ; (*State of Connecticut* v. *Bradish*, 14 Mass. Rep. 296.) A member of a corporation may sue the corporation; (*Waring* v. *Catawba Co.*, 2 Bay's Rep. 109.) Inhabitants of parishes in England have been admitted as witnesses in a suit concerning land in which the parish was interested ; (*Meredith* v. *Gilpin*, 6 Price, 146.) And a parishioner, although liable to be rated, if not actually rated, is a competent witness for or against his parish ; (*Rex* v. *Prosser*, 4 T. R. 17.) In the present case Kip is not directly interested in the ejectment suits. His release would

not be of any avail. His interest in the corporate property will not descend to his heirs. It cannot be assigned to any other communicant. He cannot defend as landlord. He is not personally liable for costs or mesne profits; (*First Parish in Brunswick* v. *Dunning*, 7 Mass. Rep. 445; *Nason* v. *Thatcher*, 7 id. 398; *People* v. *Runkle*, 8 John. R. 363; *Gilpin* v. *Vincent*, 9 John. 219.) An officer in a corporation can be compelled to testify against the corporation. He is not exempted or prohibited from testifying by the policy of the law. This exemption and *prohibition extends only to the case of man and wife and attorney and client. (1 Starkie's Ev. pt. 1, p. 103, 4, sect. 76, 78; 2 id. pt. 4, p. 396, 399, and notes.) An attorney may be compelled to testify that he has a deed in possession, entrusted to him by his client; (*Brandt* v. *Klein*, 17 John. R. 335; *Jackson* v. *McVey*, 18 John. 330.)

*A. Van Vechten*, in reply:—The minister, elders and deacons of the Dutch Church in New York are the agents of the corporation. The charter of that church was granted for the benefit of the corporators, who are the persons beneficially interested. Kip is substantially a party to the ejectment suits, although not so *eo nomine*. But the corporate name includes him by legal construction. The object of the statute to perpetuate testimony was to preserve evidence which might be lost by the lapse of time. The intention of the act was not to allow a party to fish for testimony. He ought to lay his finger upon the point to be proved. If it should turn out to be a fishing examination, a strict hand ought to be held over it. The examination in this case is one of this character. A church is a corporation very unlike that of a college. Suppose, as is frequently the case, property is given to the members of a church, who are afterwards incorporated, the corporators will most clearly have a personal interest in the corporate property. The provision in the Revised Statutes authorizing the admission of corporators as witnesses to testify

against the interest of the corporation, proves that it is a doubtful question whether they can now be received as such witnesses. Kip is the treasurer of the church, and as such treasurer has the custody of their title deeds. Parol proof could not upon trial be given of their contents, unless notice to produce them had been served. Here Kip was required to testify in relation to them without the service of any such notice; which testimony was to be used upon the trial, in the event the deeds were not then produced. It is not true that, in order to entitle a party in interest to the privilege of refusing to testify, his admissions must be evidence against the opposite party. Co-tenants may generally be witnesses for each other; but if *there was a survivorship of interest between them, they would be privileged from answering questions which would destroy their title. As to the interest of Kip, the only question is, is it an existing interest, and not whether it be alienable or descendible. But the interest of Kip in the pews is both alienable and descendible. A communicant by joining a church subjects himself to its rules, and he cannot abandon the church without its consent. If he does, he is an undutiful member, and becomes obnoxious to its reproaches. Charity should induce the belief that his Christian faith does not depend upon and is not affected by his temporal interest.

THE CHANCELLOR:—By the act under which these proceedings were instituted, it was the intention of the legislature to give to the master or other officer power to take testimony and to compel the witnesses to give evidence in the same cases and to the same extent that the court would be authorized to compel the witness to testify on the trial of the cause.[1] It does not authorize the examination of a witness who would not be compelled to testify on the trial. The witness is not obliged to criminate himself, or answer any question which he would not be bound to answer if examined in open court. The provision in the second sec-

[1] 2 R. S. (4th ed.) 647, sec. 60.

1829.

In the Matter of Kip.

[*607]

1829.

In the Matter of Kip.

tion of the act, (1 Rev. Laws, 455,) that the officer shall include in the deposition any answer or declaration of the witness which shall be required to be included by either party, does not deprive the officer of all discretion in deciding whether the witness shall be compelled to answer the question proposed. The legislature never intended to establish an inquisition, by which witnesses should be compelled to criminate themselves, or to disclose secrets in which the parties to the examination had no interest. But as it is impossible for the officer to understand the precise bearing the testimony will have on the cause, it is made his duty, if the witness consents to answer the question proposed, to insert such answer in the deposition, leaving the relevancy or materiality of the testimony to be decided upon by the court before whom the cause is tried. If the testimony is calculated to criminate the witness, render him infamous, or to subject him to a penalty or forfeiture, the

[*608]

officer has no right to compel him to testify.[1] So *if the master is satisfied the testimony can have no possible bearing upon the questions which may arise in the cause, he ought not to compel the witness to answer, especially where a reasonable objection is urged by him. The officer must necessarily have some discretion on this subject, and he may require the party on whose application the examination is made to explain the nature of the litigation, so far as to enable him to judge whether such applicant is proceeding in good faith to perpetuate testimony against the adverse party, or is, under that pretence, only fishing for testimony to be used against the witness, or for other purposes. On this subject the officer must be permitted to judge; and he is not compelled to commit the witness for refusing to answer, if he thinks the question ought not to be answered. If the answer to a question cannot injure or prejudice the witness, the officer should require and com-

[1] See *Southard* v. *Rexford*, 6 Cow. 254, 259; *People* v. *Mather*, 4 Wen. 229, 250, 251; *United States* v. *Burr*, 1 Rob. 207, 8, 242 to 245; see also 2 Cow. & Hill's Notes to Phil. Ev. 736–746.

pel him to testify, unless he is satisfied the evidence could not have any possible bearing upon the subject in controversy.

By the charter of the Dutch Church in New York, granted in 1696, and confirmed by the act of the 17th of March, 1784, (1 Greenl. ed. of laws, 67,) the minister, elders and deacons, and all other communicants of that church, and their successors, are corporators, under the name or style of "The Minister, Elders and Deacons of the Reformed Protestant Dutch Church in the city of New York." The witness is a corporator and also an officer of the corporation. Although he may not have any personal interest in the suits now commenced, he has an interest in the question to which it is proposed to examine him before the master; as the title to the churches in which he is a pew owner, depends on the same question substantially as that which arises in the present suits. The questions to be decided in this case are:

1st. Is a witness compelled to testify to matters relevant to the issue, in a cause to which he is not a party, when his answers will subject him to a civil suit; or may be used against him in a suit in which he is interested?

2d. Is a member of a corporation aggregate so far a party to a suit brought by or against the corporation as to excuse *the corporator from giving testimony in favor of the adverse party?

[*609]

Both of these questions have been frequently agitated in the courts of this country and of England, and the decisions in relation thereto have not been uniform. Another question has often been raised, as to how far, and in what cases, corporators may be witnesses in behalf of the corporation; but that question does not arise here.

It was once doubted in England whether a witness could be compelled to answer any question where the answer might subject him to a civil suit, or charge him with a debt. Two *nisi prius* decisions of Lord Kenyon, and a *dictum* of Chief Justice Pratt are referred to by Peake, to

show that a witness is not bound to answer under such cir-cumstances. (Peake's Ev. 184.) By referring to Peake's note of the case of *Bain* v. *Hargrave*, it will be seen that the question put to the witness was not relevant to the cause then on trial, and was only intended to ascertain whether the witnesses did not owe money to the plaintiff. Lord Kenyon said he would not compel the witness to answer any question which might tend to charge himself with the debt.[1] And in *Raines* v. *Towgood*, also referred to by Peake, the witness was excused from answering the question, as his answer might subject him to a penalty of 500*l.* under the act to prevent stock jobbing. In the case before Chief Justice Pratt, (1 Strange, 406,) the witness was compelled to answer, although it went against his interest; but the chief justice intimated that he would not have compelled an answer under other circumstances. And in *Title* v. *Grevett*, (2 Lord Raymond, 1008,) Holt, Chief Justice, said a man who had conveyed land might be a witness to prove he had no title, for he testified against himself, but he was not compelled to testify. The loose *dicta* in the two last cases, and those two *nisi prius* decisions of Lord Kenyon, are all the authorities relied on by Peake, to support this position; and it is remarkable that the case of *Bain* v. *Hargrave*, the only one in which the question is said to have been raised, is contradicted on the authority of Lord Chancellor Erskine, (1 Hall's Law, I. 230.) He says that for 27 years he had not been prevented from attending the courts by *any indisposition or bodily infirmity, and during all that time he never knew the objection taken that the answer to an interrogatory would render the witness responsible in a civil suit; that he was counsel in the cause stated in Peake's note, but had no recollection that any such decision was made. In 1806, this question came before the House of Lords in consequence of the proceedings in Lord

[*610]

[1] In New York a witness cannot refuse to answer any question on the ground that it will subject him to a civil suit. 2 R. S. (4th ed.) 652, sec. 101, *Cook* v. *Spalding*, 1 Hill. 588.

Melvill's case, and the opinion of the twelve judges was required thereon. Their opinions are briefly alluded to in a note to the last London edition of Phillips' Evidence, (1 Phil. Ev. ed. of 1829, p. 272, n.) Four judges were of opinion that the witness was not bound to answer. The other eight judges were of the contrary opinion; and in which they were supported by Lord Eldon and Lord Chancellor Erskine. I think these opinions, supported as they are by that of Lord Mansfield, are conclusive to show that in England a witness, who is neither nominally or substantially a party to the suit, is bound to answer any question pertinent to the issue, where his answer will not criminate himself, or subject him to a penalty, or to some loss or injury which is in the nature of a penalty or forfeiture. (See 1 Hall's Law, I. 223,) In consequence of the difference of opinion among the English judges, an act was passed declaring the law to be in accordance with the opinion of the eight judges and of the Lord Chancellor and Lord Eldon. (Statutes at Large, May, 1806.)

The same question has frequently been agitated in this country, and the decisions in the different states have not been uniform. In most of the states where the question has been raised, the witness has been compelled to testify. In Connecticut it has been decided that the witness was not compellable to testify against his own interest. (2 Root's Rep. 406, 528; 3 Conn. Rep. 528; Kirby's Rep. 203.) A similar decision was made in the state of Tennessee, (*Cook* v. *Corn*, 1 Overton's Rep. 340.) In Pennsylvania, Maryland, Kentucky and Louisiana, it is settled that a witness is bound to answer a question pertinent to the issue, although such answer may subject him to a civil suit. (*Baird* v. *Cochran*, 4 Serg. & Rawle, 397; *Taney* v. *Kemp*, 4 Harris & John. 348; *Gorham* v. *Carrol*, 3 Little's Rep. 221; *The Planter's* *Bank* v. *George*, 6 Martin's Rep. 670.) Derbigney, J., who delivered the opinion of the court in the last case, says their decision is not founded on the ancient law of Louisiana on that subject, which was abrogated by

[*611]

the establishment of a free government, instead of the des-
potism by which the country had previously been governed.
But he founds the decisions of the court upon the principles
recognized in those countries where liberty directs the ad-
ministration of justice ; and he refers to the opinions of the
English judges and Chancellor on Lord Melvill's witness
and indemnity bill.    In the case of *The Executor of Haw-
kins* v. *Sumpter*, (4 Dessaus. Rep. 103, 446,) the Court of
Chancery of South Carolina compelled a witness, on a sub-
poena *duces tecum*, to produce books in his possession, al-
though he alleged that their production would enable par-
ties to recover against him, as the bail for a deceased
sheriff, whose estate was insolvent ; and this decision was
affirmed on appeal.    In *Appleton* v. *Boyd*, (7 Mass. Rep.
131,) the Supreme Court of Massachusetts refused to com-
pel a witness who was jointly interested in the event of the
suit, as the partner of the plaintiff, to give testimony
against his interest.    But on examination of that case, it
will be found perfectly consistent with the opinion of the
majority of the judges in Lord Melvill's case ; for the ob-
ject of the defendant was to establish the defence of usury ;
which was in the nature of a penalty or forfeiture.    The
case of *Mauran* v. *Lamb*, in the Supreme Court of this
state, (7 Cowen's Rep. 174,) was a similar attempt by the
defendant, to establish a defence of usury by the testimony
of the real plaintiff in the suit ; where the action was nomi-
nally in the name of another person, but for her sole bene-
fit.    On no principle therefore could she be compelled to
testify to facts which would subject her to a forfeiture and
defeat her action.    The question now under discussion was
not intended to be decided in that case.

Upon a full examination of all the authorities on this sub-
ject to which I have been referred, or which I have been
able to obtain by my own researches, I have arrived at the
conclusion, that a witness, who is neither nominally nor
substantially a party to the suit, is not exempted from giv-
ing evidence, *although that evidence may be used against

[*612]

him in a civil suit, unless the disclosure will subject him to
some loss or disadvantage in the nature of a penalty or for-
feiture. If the party to whom the witness makes himself
responsible by his testimony could, by a bill of discovery,
obtain the same disclosure to be used directly against the
witness himself, it would be unjust to deprive such party
of the benefit of the testimony against a third person. In
such a case the answer of the witness to a bill of discovery
could not be read in evidence in a suit against the third
person; and the only way to obtain the testimony is to ex-
amine the interested person as a witness.

The conclusion at which I have arrived on the first
point, renders it necessary to examine the question whether
Kip is so far a party to the suits as to excuse him from tes-
tifying. In other words, could his answer to a bill of dis-
covery be read in evidence against the corporation of which
he is a member? The case of *The King* v. *The Inhabi-
tants of Woburn*, (10 East's Rep. 395,) is relied upon to show
that corporators are the real parties to the suit, and are ex-
cused from giving testimony against the corporation. That
was not a proceeding against a corporation, and the witness
was not excused on the ground that he was a corporator.
It was a proceeding under the English poor laws, where
the appeal is carried on by the inhabitants of the parish in
the names of their officers. The costs of the suit, and other
expenses of the pauper, are charged upon the inhabitants,
actually rated in proportion to their property. They are
the real parties, and the expense falls directly upon them.
In that case, Le Blanc, Justice, says, "If the sessions had
been aware, at the time, of the extent of the question, there
would have been no difficulty; for if the witness was re-
jected on the ground of his being a party to the suit, his
declaration of any facts touching the matter in issue would
necessarily have been evidence against him." And in the
case of *The King* v. *The Inhabitants of Hardwick*, (11 East,
578,) the same court decided that the rated inhabitants
were the real parties to the appeal, and that the declaration

of a rated inhabitant of one parish might be given in evidence in favor of the adverse parish. *These cases do not, therefore, depend upon the principles applicable to incorporations, as the declarations of corporators, even officers of a corporation, are not evidence. (*Hartford Bank* v. *Hart*, 3 Day's Rep. 491; *Magill* v. *Kauffman*, 4 Serg. & Rawle, 317.) In the *Bank of the United States* v. *Deveaux*, (5 Cranch, 61,) the Supreme Court of the United States decided that the corporators, and not the corporation, were to be considered the parties, in determining the question of jurisdiction; and that an averment that the complainants were citizens of Pennsylvania, was an allegation that all the stockholders of the bank were citizens of that state. But in the case of *The Bank of the United States* v. *The Planters' Bank of Georgia*, (9 Wheaton, 904,) they decided that the corporation could be sued in the United States' courts, although a sovereign state, which could not be sued, was one of the corporators. These cases depended upon the construction of the constitution and laws of the United States, in relation to the jurisdiction of the federal courts. Even on that question the judges were not unanimous; but they exemplify the principle, that in a case of doubt a good judge always decides in favor of his own jurisdiction. Neither of these decisions had any reference to the question whether the corporators were to be considered parties to the record so far as to prevent their being witnesses. I believe it is now the practice of all courts to admit corporators to testify in behalf of the corporation where they have no personal interest in the controversy; and against the corporation where the witness does not object. But they are excluded from testifying where they have a direct personal interest in favor of the party calling them, in virtue of the corporation or otherwise. The freemen of our cities are corporators, and have an indirect interest in almost every suit brought by the corporation. But they are admitted as competent witnesses, and are even permitted by statute to serve as jurors, which certainly could not be allowed if

they were considered parties to the suit; as it is a universal rule of natural law that no man shall be a judge in his own case; and jurors are judges of the facts. In the case under consideration, it is even doubtful whether the members of the Dutch Church *have such a direct interest in this controversy as to render them incompetent witnesses for the corporation. The only case which I have been able to find in which the precise question now presented has been decided, is *The City Bank of Baltimore* v. *Bateman*, (7 Har. & John. 104.) In that case the Court of Appeals in Maryland decided that the president of a moneyed corporation, who was a stockholder therein, might be called as a witness for the adverse party, and compelled to testify against his interest. An express provision to that effect is made in the late revision of the laws in this state, (2 Rev. Stat. 405, 407.) The note to this provision, in the report of the revisors is, that it is intended as declaratory of the rule believed to exist, but sometimes questioned. (Revisors' Rep. pt. 3, ch. 7, tit. 3, sect. 96.) The notes of the revisors are not considered as authorities settling what the law previously was; but they may properly be referred to for the purpose of showing that a particular section was not introduced by them into the statutes as containing a new principle.

It was suggested by the counsel for the corporation that the evidence sought from this witness might be obtained by a bill of discovery; but if I am correct in supposing the declaration of the corporator would not be evidence against the corporation, I apprehend his answer to such a bill could not be read in evidence against them. (*Vermilyea* v. *The Fulton Bank*, 1 Paige's Rep. 37.)

I think the witness was not so far a party to the suits in this case as to excuse him from testifying. The master was therefore right in requiring him to testify notwithstanding his objection. He was legally and properly committed for refusing to be sworn and give evidence in relation to the subject matter of those suits; and he must be remanded to

the custody of the sheriff, on the warrants of commitment, until he submits to be sworn and give evidence to be used in those suits.