THE BERGEN COUNTY MUTUAL ASSURANCE ASSOCIATION *ads.* ISAAC I. COLE.

In a suit where a corporation is a party, the officers and members are not parties to the action, and are competent witnesses, both at common law and under the statute.

Isaac I. Cole brought an action in this court against the Bergen County Mutual Assurance Association, on a policy of insurance issued by said company. The cause was tried at the Bergen Circuit, at April Term, 1856. On the trial the following facts appeared in evidence: The

policy was dated December 8th, 1853, and issued for one year. On the first day of December, 1854, Simeon Zabriskie, who was then treasurer and secretary of the company, wrote a note to Cole, informing him that his policy would expire on the 8th, and requesting him to call and have it renewed. Cole did not call to get his policy renewed until January 27th, 1855. Zabriskie then gave him a certificate of renewal for five years, dated December 8th, 1854, and Cole renewed the premium note. Where a renewal was not made until some time after the expiration of the policy, it had been the practice of the secretary to date it back at the time the policy expired. On the 24th of January, 1855, Zabriskie resigned, and Myers Anderson was appointed treasurer and secretary in his place; but at the time of the renewal of Cole's policy, Anderson's bonds had not been approved by the company, and Zabriskie still held the funds of the association, and had possession of most of the books and papers, and kept them at his own house, where the business of the company had previously been transacted. When he renewed Cole's policy, he said nothing to him about having resigned, and it did not appear that Cole had at that time any knowledge of Zabriskie's resignation, but, on the contrary, supposed he was treasurer and secretary of the company. Cole had paid to Zabriskie an assessment on his premium note after his policy ran out, but it was for a loss that occurred and on notices that had been served on him before his policy expired.

Zabriskie continued to collect assessments for the company, by their request, to pay Richard Cole's loss, and to hold the funds as treasurer, until February 15th, 1855, when Anderson's bonds were approved, and Zabriskie settled up his accounts, and paid over to Anderson all the money in his hands belonging to the company. Zabriskie did not renew any policy except Cole's, nor did he otherwise act as secretary after January 24th.

The reason Zabriskie assigned for renewing Cole's

policy was, that the renewal was dated before his resignation, and he thought it proper that he should sign it. All other renewals after January 24th were executed by Anderson, the new secretary. The transaction between Cole and Zabriskie appeared to have been in good faith, and without any design, on either side, to defraud the company.

The minutes of January 24th were signed by Anderson, as secretary, and after that time he performed all the duties of secretary, except the renewal of the plaintiff's policy.

The defendants offered as witnesses William De Wolfe, Garret Myers Anderson, and 'Garret S. Ackerson. De Wolfe was president, Anderson was secretary, and all three were directors and members of the company. They were objected to by the plaintiff as incompetent, on the ground that they were officers and members of the company, and therefore parties to the suit. The court sustained the objection, and excluded the witnesses.

The jury rendered a verdict for the plaintiff. On the coming in of the *postea*, the defendants moved for a new trial.

The cause was argued at February Term, 1857, before the CHIEF JUSTICE, and Justices OGDEN, POTTS, and VREDENBURGH.

*Zabriskie*, for the motion.

*Bradley* and *Pennington*, contra.

The CHIEF JUSTICE delivered the opinion of the court.

One of the grounds assigned for setting aside the verdict, is the rejection upon the trial of competent testimony. The defendants called as witnesses their president and secretary, who were corporators and directors of the company. Their testimony was rejected, on the ground that they were parties to the action. The act of

1855 (*Nix. Dig.* 887, § 26,) removes all disqualification on the score of interest. The only inquiry is, are the corporators parties, or is the corporation. the *body politic*, alone the party to the action. Different views of the true construction of this statute having been expressed upon the circuit, it is proper that the question should be fully settled.

Nothing is more clear than the distinction existing in law between the person of the corporation and that of the individual corporators. A corporation, says Mr. Kyd, is a political person, capable, like a natural person, of enjoying a variety of franchises. It is vested, by the policy of the law, with a capacity of acting in several respects as an individual, particularly of taking and granting property, contracting obligations, and of *suing and being sued.* 1 *Kyd* 13, 15. The great object of an incorporation is to bestow the character and properties of personality and individuality upon the legal entity called the corporation, as distinct from the persons of the corporators. *Dartmouth College* v. *Woodward,* 4 *Wheat.* 636 ; *Providence Bank* v. *Billings,* 4 *Peters* 562. And the power of suing and being sued as a person in its corporate name is one of the inherent capacities of every corporation at common law, as well as by statute. *Ang. & Ames on Corp.,* § 110 ; *Nix. Dig.* 138, § 1.

As a result of this principle, a contract by a corporation does not bind the individual corporators. A judgment against a corporation is no lien upon the property of the corporators. In a suit by a corporation, the individual corporators are not liable to be served with process, nor are they answerable for costs. In actions by and against corporations, the declarations of corporators are not admissible in evidence against the corporation as the declarations of parties. *The Mayor of London* v. *Long,* 1 *Camp.* 25 ; 1 *Greenl. Ev.,* § 332.

Corporators may be called as witnesses, and compelled to testify against their interest in a suit where the corpo-

ration is a party; which could not be if they were parties to the suit, for at common law no party could be compelled to testify against himself.· *City Bank of Baltimore* v. *Bateman*, 7 *Har. & J.* 104; *In the matter of Kip*, 1 *Paige* 613.

The members of charitable and religious societies, having no personal and private interest in the property holden by the corporation, are competent witnesses in any suit in which the corporation is a party; which could not be if the corporator was a party, for he could not be a witness for himself. *Weller* v. *Governors of Foundling Hospital*, *Peake* 163; 1 *Greenl. Ev.*, § 333.

So the members of municipal corporations may be witnesses for the corporation. *Van Wormer* v. *Albany*, 15 *Wend.* 262; *Watertown* v. *Cowen*, 4 *Paige* 510.

The principle pervading these cases is thus ·clearly stated in a valuable· elementary treatise: "It appears always to have been considered that, in actions by or against corporations, individual corporators are· competent where they have no interest in the event of the suit; for in all cases the objection to the witness has been, not that he was a member of the corporation, and consequently one of the parties to the suit, but that he had some personal interest which disqualified him from giving evidence." 1 *Phil. & Amos on Ev.* 49.

It is, says Greenleaf, the corporation, and not the individual member, that is a party to the record in all suits by or against it. 1 *Greenl. Ev.*, § 332.

These cases show clearly that, as the law stood at the passage of the act of 1855 concerning evidence, a member of a corporation was not deemed a party to a suit, and that he was excluded from being a witness solely on the ground of interest. This disqualification being removed by the act, the corporators became competent witnesses in suits by or against the corporation. And in this respect there is, in reality, no difference between the officers (the president, secretary, and managers,) and any

other member of the corporation.  Many of the cases cited are where the witness offered was an officer, as well as a member, of the corporation.

The provisions of the New York code, in this respect, are similar to our act of 1855.  The 398th section declares that no person offered as a witness shall be excluded by reason of his interest in the event of the action.  The 399th section declares that the last section shall not apply to *a party to the action,* nor to any person for whose *immediable benefit* it is prosecuted or defended.  The true construction of this provision has undergone repeated and elaborate investigation in the courts of that state, and its judicial construction is fully settled.  Upon the construction of the second clause of the section, there appears to have been some conflict of authority upon the question whether a corporator is a person for whose immediate benefit an action by or against the corporation is prosecuted or defended.  But upon the construction of the first clause the cases are uniform, that a corporator is not a party to an action brought by or against the corporation.  *The Washington Bank* v. *Palmer,* 2 *Sand. Sup. Co. R.* 686, 690, *note a ; The New York and Erie R. R. Co.* v. *Cook, Ib.* 732; *The Montgomery Co. Bank* v. *Marsh,* 11 *Barb.* 645; *S. C. in error,* 3 *Seldon* 481 ; *Pack* v. *The Mayor, &c., of New York,* 3 *Coms.* 489.

In the case last cited, Mr. Justice Bronson, in delivering the opinion of the Court of Appeals, said it must be regarded as settled, that in a suit by or against a corporation, neither a corporator nor an officer can be rejected as a competent witness for the corporation, on the ground that he is a party to the record.

This construction of our statute can in nowise be influenced by the decisions of the Supreme Court of the United States upon the citizenship of a corporation, and the subsequent jurisdiction of the federal courts over actions by and against corporations.  If those decisions were less conflicting than they are, if any well-defined princi-

ple had been settled by them, it is obvious that they have turned upon questions of constitutional construction, and have been influenced by considerations of public policy which do not at all enter into the consideration of the question before this court. *Bank of U. S.* v. *Deveaux,* 5 *Cranch* 61; *Bank of Vicksburg* v. *Slocomb,* 14 *Peters* 60; *Louisville R. R. Co.* v. *Letson,* 2 *How.* 497; *Marshall* v. *The Baltimore and Ohio R. R. Co.,* 16 *How.* 314; *Wheeden* v. *The C. and A. R. R. Co.,* 4 *Am. Law Reg.* 296; 1 *Kent's Com.* 347.

On the ground that the court overruled competent evidence, the verdict must be set aside, and a new trial granted.

So far as the merits of the case are concerned, I concur in the opinion of my brethren, that the verdict is not against evidence.

Verdict set aside, and a new trial granted.